**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NUMBER 26-27** |
| | **:** | |
| | **:** | |
| **GRISELLE LACOSTA-FRANCO** | **:** | |

**O R D E R**

    **AND NOW**, this          day of                        , 2026, in

consideration of the Defendant's Motion to Suppress Cell Phone Data, the government's responses

thereto, it is hereby **ORDERED** that the motion is **GRANTED**.

                                        **BY THE COURT:**

                                        _____

                                        **THE HONORABLE GAIL A. WEILHEIMER**
                                        **United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NUMBER 26-27** |
| | **:** | |
| | **:** | |
| **GRISELLE LACOSTA-FRANCO** | **:** | |

**MOTION BY DEFENDANT GRISELLE LACOSTA-FRANCO
<u>TO SUPPRESS CELL PHONE DATA</u>**

Griselle LaCosta-Franco, by and through her attorney, Jeremy Isard, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby moves to suppress any and all evidence obtained as the result of the unreasonable seizure of her two cellphones which were searched pursuant to an unconstitutional general and overbroad warrant that lacked sufficient indicia of probable cause. Specifically, Ms. LaCosta-Franco avers the following:

1.     Ms. LaCosta-Franco is charged with possession with intent to distribute 1,000 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), and (b)(1)(A) (Count I), and possession with intent to distribute, in violation of  21 U.S.C. § 841(a)(1), and (b)(1)(C) (Count II).

2.     Ms. LaCosta-Franco was arrested on September 22, 2025, when law enforcement observed her enter a parked stolen vehicle; a search of Ms. LaCosta-Franco's person revealed two cellular telephones, a navy-blue colored Apple iPhone and an Apple iPhone in a black case, and what the government alleges to be controlled substances.

3.      Although the cell phones were seized on September 22, 2025, the government waited until February 4, 2026, to apply for a warrant to search the contents—weeks after indicting Ms. LaCosta-Franco on the instant charges. The seizure, which was lawful on September 22, 2025, became unreasonable when the government failed to exercise due diligence in securing a timely warrant, instead letting the phones sit in an evidence bag for more than four months.

4.      The warrant itself suffers from three fundamental constitutional deficiencies:

    a.   The warrant lacks probable cause to search the location specified because it fails to allege that Ms. LaCosta-Franco used these cellphones (or any cellphone) to facilitate a crime. No objective facts known to law enforcement support this attenuated inference. Apart from guesswork, there is no nexus offered between Ms. LaCosta-Franco's cellphones and any crime, let alone the conduct alleged in the indictment.

    b.   The warrant to search the phones is defective because it does not state, with particularity, the scope of the search requested and the constitutional justification for that intrusion. It is thus akin to a general warrant.

    c.   The warrant is unconstitutionally overbroad.

5.      Moreover, during the government's delay in seeking a warrant, the stolen vehicle investigation continued to develop. The owner of the truck admitted to police that he and his fellow travelers in the Dodge (two sex workers he paid for companionship) used narcotics the night before the Dodge was stolen and that he was hospitalized the next day. One of these individuals was then arrested and charged for stealing the Dodge truck at issue. In an effort to find the truck, the owner pointed police to the North Philadelphia rowhome where he met the sex workers, explaining that the house got raided by law enforcement the night after his encounter. But the government conspicuously omitted these material facts in the affidavit of probable cause. These material omissions frustrated the magistrate judge's probable cause analysis.

6.      For the reasons set forth in the accompanying Memorandum of Law, which is incorporated here by reference, Ms. LaCosta-Franco seeks suppression of all evidence extracted from her cellular telephones and the fruits thereof.

WHEREFORE, the defense respectfully requests the Court enter the attached proposed order granting Ms. LaCosta-Franco's Motion to Suppress.

Respectfully submitted,

*/s/ Jeremy Isard*
JEREMY ISARD
Assistant Federal Defender

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NUMBER 26-27** |
| | **:** | |
| | **:** | |
| **GRISELLE LACOSTA-FRANCO** | **:** | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
GRISELLE LACOSTA-FRANCO'S MOTION TO SUPPRESS CELL PHONE DATA**

Griselle LaCosta-Franco, by and through her attorney, Jeremy Isard, Assistant Federal

Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby

moves to suppress all evidence obtained from the search of her two cellphones, a navy-blue colored

Apple iPhone and an Apple iPhone in a black case, seized from her person during her September

22, 2025 arrest. First, law enforcement failed to exercise diligence in obtaining a timely warrant

causing the continued seizure of Ms. LaCosta's phones to become constitutionally unreasonable.

Second, the ultimate application for the warrant, *attached as Exhibit A,* lacks probable cause to

support the government's intrusion into Ms. LaCosta-Franco's cell phones because there is no

articulated nexus between her cell phones and a crime. Third, the warrant lacks particularity and

seeks to search the entirety of her phones' data without the requisite constitutional justification.

Fourth, the warrant is unconstitutionally overbroad. For these four independent reasons, the

evidence obtained from the phones, and its fruits, must be suppressed.[1]

---

[1] The probable cause and particularity defects in the warrant, and overbreadth, are four-corner arguments that could be decided without a suppression hearing. The defense maintains that these defects are each independently dispositive of the suppression inquiry. The (un)reasonableness of the four-month delay in seeking a warrant, by contrast, is a factual issue that could be (depending on the government's response) illuminated by testimony.  If the Court holds a hearing on the issue of delay or otherwise, Ms. LaCosta-Franco respectfully reserves the right to cross-examine government witnesses about investigative steps taken between September 2025 and February 2026, and if additional

## I.     BACKGROUND

Griselle LaCosta-Franco is charged in a two count indictment with possession with intent to distribute 1,000 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), and (b)(1)(A) (Count I), and possession with intent to distribute, in violation of  21 U.S.C. § 841(a)(1), and (b)(1)(C) (Count II). Ms. LaCosta-Franco was arrested on September 22, 2025, when law enforcement observed her entering a 2021 Silver Dodge Ram R15 truck, which was reported stolen just one day prior. Law enforcement arrested Ms. LaCosta-Franco and seized two cellular telephones from her person as well as certain alleged controlled substances. While Ms. LaCosta-Franco does not dispute the immediate facts of her arrest for the purposes of this motion, she challenges the probable cause underlying the warrant to search the cellular phones presented to a magistrate judge many months later.

A.  *The Events Preceding Ms. LaCosta-Franco's Arrest.*

According to the East Whiteland Township Police Stolen Vehicle Report, *attached as Exhibit B*[2], the owner of the Dodge Ram R15 hired two sex workers via the website Skipthegames.com on September 14, 2025. The owner (hereafter, "A.K.") drove to the intersection of Homestead Street and Tacony Street in Northeast Philadelphia (the location of Club Risque Gentlemen's Club) to pick up the two women but the rendezvous instead occurred at a nearby house with lots of other people ("all them dudes"). *Ex. B, USA000491.* A.K. explained to investigators on this case that the house was raided by law enforcement the following day. *Id.* A.K. transported the party back to his Malvern apartment for a drug-fueled encounter. A.K. made a $200 CashApp payment to R.B., the first sex worker, on September 14, 2025, at 5:37 p.m. and another

---

material factual omissions from the warrant arise, to ask the Court to conduct an inquiry pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

[2] Exhibit B is subject to a protective order and will be submitted to the Court separately.

$200 payment to R.B. the next morning at 6:41a.m. Around noon the next day, an argument ensued and the women fled A.K.'s Malvern apartment. That same day, A.K. discovered his vehicle was missing but waited nearly a week to report the theft to the East Whiteland Township Police. *See Ex. B.*

The East Whiteland Township Police Stolen Vehicle Report makes clear that the two women were suspects in the auto theft. With the help of A.K., both women were promptly identified through various social media sites and phone numbers. One of the women was interrogated and then arrested by police for stealing the truck. She confirmed that she and her co-worker were asked to leave the apartment and then took the Dodge R15. She claimed that she exited the vehicle and her co-worker, "Sammy," (the name listed in the redacted version of the Stolen Vehicle Report) drove away with the vehicle, abandoning it in Kensington. *Id.*

A.K. alerted police to the theft six days later, on September 21, 2025. Asked why he waited, A.K. explained to police "he believed his mother may have taken it due to his recent destructive behavior." *See Ex. B* USA-000503. Upon information and belief, A.K. pointed police to the specific rowhouse where he met R.B. and "Sammy" and said it had recently been raided.

On September 22, 2025, Philadelphia police located the truck on Shelmire Avenue. Officers surveilling the vehicle observed Ms. LaCosta-Franco enter the truck. They arrested her and seized two cellphones and alleged controlled substances from her person. The phones remained in local custody until October 13, 2025, when they were transferred to the Drug Enforcement Administration (DEA) Field Division. More than four months after the seizure, DEA Special Agent Ryan Scanlan applied for a warrant to search Ms. LaCosta-Franco's phones.

B. *The February 4, 2026 Search Warrant.*

On February 4, 2026, almost four months after taking possession of the cellphones, Special Agent Scanlan applied for a warrant to search Ms. LaCosta-Franco's phones. The warrant contains boilerplate language regarding the nature of information that may be contained in cellphones and how such information could inform law enforcement's investigation. Without articulating any link between controlled substances and Ms. LaCosta-Franco's telephones or including any suggestion or inference that Ms. LaCosta-Franco used her cellphones in relation to a crime, Special Agent Scanlan predicated his belief that her phones contained evidence of drug trafficking solely on his general "training and experience." Ex. A at ¶21. In stock paragraphs, he averred:

21. Based on my training and experience, I know drug traffickers *commonly* utilize their cellular telephones to communicate with co-conspirators to facilitate, plan, and execute their drug transactions and may discuss the use of firearms to protect their product and proceeds or to otherwise further their criminal activities. For example, drug traffickers *often* store contacts lists, address books, calendars, photographs, videos, audio files, text messages, call logs, and voice mails in their electronic devices, such as cellular telephones, to be used in furtherance of their drug trafficking activities.

22. I also know that those involved in drug trafficking communicate with associates using cellular telephones to make telephone calls. If they are unable to reach the party called, they frequently leave voice mail messages. I am aware that Apple-based and Android-based phones download voice mail messages and store them on the phone itself so that there is no need for the user to call in to a number at a remote location and listen to the message. In addition, I know those involved in drug trafficking communicate with associates using cellular telephones and tablets to send e-mails and text messages and communicate via social media networking sites. By analyzing call and text communications, *I may be able to determine the identity of co-conspirators and associated telephone numbers*, as well as if there were communications between associates during the commission of the crimes.

Ex. A at ¶¶ 21, 22 (emphasis added). He also claimed that "drug traffickers sometimes use cellular telephones as navigation devices," and that "drug traffickers often use a cellular phone's Internet browser for web browsing activity related to their drug trafficking [.]" *Id.* at ¶¶ 24, 25. Critically, the warrant offered the magistrate judge no additional facts to believe that evidence of drug

trafficking would be located on Ms. LaCosta-Franco's phone. It offered no evidence that Ms. LaCosta-Franco had so-called "co-conspirators." It offered no facts specific to this case linking the phones recovered to any crime. Instead, the warrant collapses into a general proposition unsupported by law: that possession of a large quantity of narcotics automatically provides probable cause to search a defendant's phones.

At the time he swore out the warrant, Special Agent Scanlan failed to disclose that law enforcement had already identified the vehicle theft suspects, interrogated and arrested one of the suspects, and was actively seeking another—none of whom were Ms. LaCosta-Franco. Special Agent Scanlan omitted the fact that the truck had recently been used by A.K. and the suspects during their drug-fueled dalliance and that A.K. waited nearly a week before he reported the vehicle stolen. Similarly omitted was the fact that the charged suspect in the auto-theft was linked to a rowhouse raided by police and allegedly dumped (or sold) the vehicle in Kensington, a neighborhood that (by some definitions) includes the raided rowhome and otherwise hosts a high-volume narcotics trade.

### C. General Procedural History.

A grand jury indicted Ms. LaCosta-Franco on January 15, 2026. Since that time, the defense has received four discovery dumps by the government: on January 29, February 19, February 25, and February 26, 2026.[3] The last tranche includes a search warrant for Ms. LaCosta-Franco's iCloud accounts (prietalacoste@gmail.com, prietalacosta83@gmail.com, mamitaretateamo@gmail.com). The iCloud Warrant, *attached as Exhibit C*, suffers from the same

---

[3] The discovery deadline in this case was February 18, 2026 (this deadline does not appear in the Court's scheduling order, ECF No. 12, rather this was the deadline recorded by defense counsel during the February 10, 2026 telephone status conference). The government should be precluded from using any discovery disclosed after the Court-ordered deadline. Especially in light of the four-month delay in seeking the warrants at issue, Ms. LaCosta-Franco is prejudiced by late discovery. For example, it hampered her preparation for the present motion; the iCloud warrant arrived the day suppression motions were due.

constitutional infirmities identified in this motion, and is the fruit of the unconstitutional cellphone warrant.[4] It appears the government applied for that warrant on February 13, 2026, even later than the phone warrant. This timing also demonstrates that the iCloud warrant is direct fruit of the cell phone warrant.

This matter is scheduled for trial on April 7, 2026.  For the reasons that follow, all evidence seized pursuant to the constitutionally unreasonable seizure and/or search of Ms. LaCosta-Franco's cellular telephones, and fruit thereof, must be suppressed.

## II.    LEGAL ANALYSIS

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The warrant clause therefore has three requirements: "that a warrant be issued by a neutral and detached magistrate, be supported by probable cause, and particularly describe the place to be searched and the things to be seized." *United States v. Fumo*, 565 F. Supp. 2d 638, 641-42 (E.D. Pa. 2008) (citing *United States v. Ritter*, 416 F.3d 256, 262, 264-65 (3d Cir. 2005); *United States v. McNally*, 473 F.2d 934, 936 n.2 (3d Cir. 1973)). "When a defendant's Fourth Amendment rights have been violated by a search or seizure pursuant to a warrant that does not conform to these requirements, 'the principal means today for effectuating the rights secured by the Fourth Amendment is through the judicially created exclusionary rule.'"

---

[4] The iCloud warrant differs from the phone warrant in three ways. First, the iCloud warrant includes a jurisdiction section and a section dedicated to the grand jury indictment of Ms. LaCosta-Franco. Ex. C. at ¶¶ 8, 22. Second, it accounts for the issuance of the phone warrant and states that although the government has been unable to "crack the passcode" for the phones, it was able to extract the three @gmail accounts for which it seeks the iCloud warrant. Ex. C. at ¶23. This further demonstrates that any iCloud returns are fruit of the phone warrant at issue in this motion. Finally, the boilerplate background information concerning Apple and Electronic Devices differs. The probable cause sections are identical. *See Exs. A and C.*

*Id.* (quoting *United States v. Christine*, 687 F.2d 749, 757 (3d Cir. 1982)). The rule also provides for the exclusion of all fruits resulting from an unconstitutional seizure and search. *See Wong Sun v. United States*, 371 U.S. 471 (1963); *United States v. Coggins*, 986 F.2d 651, 653 (3d Cir. 1993).

Here, the warrant fails to pass constitutional muster for four reasons: (1) the government's seizure of Ms. LaCosta-Franco's phones in September 2025 became unreasonable under the Fourth Amendment when the government delayed applying for a warrant until February 4, 2026; (2) on its face, the warrant does not provide probable cause to justify a search of Ms. LaCosta-Franco's telephones, (3) the warrant lacks particularity and is akin to a general warrant, and (4) the warrant is overbroad.

*A. The Government Failed To Exercise Diligence In Obtaining A Timely Warrant In Violation of The Fourth Amendment.*

For purposes of this motion only, there is no dispute that the search incident to arrest exception allowed law enforcement to seize the cellphones found on Ms. LaCosta-Franco's person. *See United States v. Shakir*, 616 F.3d 315, 317 (3d Cir. 2010). However, this case is unlike those where a defendant consents to a seizure of their property—a "distinction that matters." *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011). While the initial seizure may have been authorized, the government's failure to seek a search warrant for over four and a half months constitutes an unreasonable delay that violates Ms. LaCosta-Franco's Fourth Amendment rights.

A seizure of property, though reasonable at its inception, becomes unconstitutional if the duration of the seizure is unreasonable. *Stabile*, 633 F.3d at 235. And that is what happened here: the seizure endured too long without investigatory diligence, and therefore unlawfully infringed on Ms. LaCosta-Franco's possessory interests. *See United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) ("[E]ven a seizure based on probable cause is unconstitutional if police act with

7

unreasonable delay in securing a warrant"). Because this infringement upon Ms. LaCosta-Franco compounded with "each passing day," she asks this Court to scrutinize the government's "temporal delay" and find that the continued seizure of her cellphones violates the Fourth Amendment. *Id.*; *see also United States v. Mitchell*, 565 F.3d 1347, 1349-51 (11th Cir. 2009) (21-day delay was unreasonable); *United States v. Dass*, 849 F.2d 414, 414-15 (9th Cir. 1988) (7- to 23-day delay was unreasonable); *accord United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993).

The Supreme Court has countenanced that the seizure of a suspect's personal property is "reasonable" pending application of a search warrant in some circumstances. *See, e.g. Illinois v. McArthur*, 531 U.S. 326, 337 (2001)."To determine whether a lawful seizure becomes unreasonable, and thus unconstitutional, courts 'must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *United States v. Murphy*, No. CR 22-361, 2024 WL 3440149, at *16 (D.N.J. July 17, 2024) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). "In doing so, courts must consider if 'the police diligently pursue[d] their investigation.'" *Id.* (quoting *Place* 462 U.S. at 709).

As this Court reasoned in *United States v. Williams*, "'[w]hen police diligently pursue their investigation, a reviewing court can have confidence that the governmental interest is legitimate and the intrusion occasioned by the challenged detention was no greater than reasonably necessary.'" 2025 WL 3640894, at *6 (E.D. Pa. Dec. 16, 2025) (quoting *United States v. Babcock,* 924 F.3d 1180, 1189 (11th Cir. 2019) (additional citation omitted). "Diligence in this context," the *Williams* Court continued, "'includes not only seeking a warrant application promptly, but also communicating with the suspects concerning the specifics of the detention.'" *Williams*, 2025 WL 3640894, at *6 (quoting *Babcock,* 924 F.3d at 1189); *see also Place*, 462 U.S. at 710 ("Although

8

the 90-minute detention of respondent's luggage is sufficient to render the seizure unreasonable, the violation was exacerbated by the failure of the agents to accurately inform respondent of the place to which they were transporting his luggage, of the length of time he might be dispossessed, and what arrangements would be made for the return of the luggage if the investigation dispelled the suspicion.").

Courts often employ the so-called "*McArthur* Factors" to evaluate the reasonableness of a continued seizure pending a warrant application (there, preventing a defendant from reentering his home while officers applied for a warrant). They are: whether "(1) the police had probable cause to believe the property being seized contained evidence of a crime; (2) the police had good reason to fear evidence would be destroyed before a warrant could be obtained; (3) the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy; and (4) the time period of the seizure was no longer than necessary for the police, acting with diligence, to obtain the warrant." *Williams*, 2025 WL 3640894, at *5 (quoting *McArthur*, 531 U.S. at 331-33) (cleaned up).

Here, as detailed below, police did not have probable cause to believe the property being seized contained evidence of a crime. But even if this Court were to disagree, the government cannot even begin to meet the remaining three *McArthur* factors.

As to the second *McArthur* factor, police had no reason to fear evidence would be destroyed before the issuance of a warrant. The phones were in secure police possession—reasonably so before the delay ensued. Ms. LaCosta-Franco, meanwhile, was in state (and later, federal) custody. It is hard to fathom a risk of evidence destruction. Nor is there indication that Ms. LaCosta-Franco was advised that her phones were taken from her person for the purpose of investigation, as opposed to just securing her property because she was arrested. Despite her desire to maintain a

9

possessory interest in her telephones and their contents, she did not have a mechanism to seek their return—indeed she was not told that her phones were transferred from the Philadelphia Police Department to the DEA. There was no risk of evidence destruction.

The third *McArthur* factor is equally left wanting. There is no indication that the Philadelphia Police Department and/or the federal government made any effort, let alone a reasonable effort, "to reconcile their law enforcement needs with the demands of personal privacy." In this regard, this case is akin to *Mitchell*, 565 F.3d at 1352 and *Dass*, 849 F.2d at 414-15. *See also United States v. Brown*, No. 21-CR-251, 2023 WL 8702145, at *3 (M.D. Pa. Dec. 15, 2023). There was no law enforcement need for a four-month delay. Magistrate judges are available around the clock to review warrant applications. Upon information and belief, they are also available by phone and email.

Most egregious is the government's conduct related to the fourth *McArthur* Factor—the period of delay and lack of diligence. There is simply no conceivable basis for the four-and-a-half-month gap between seizure of the phones and the government's decision to seek a warrant to search them. Local law enforcement had the phones since September 22, 2025, and the federal government took possession of the phones on October 13, 2025. Since the time the phones were seized, it appears that no investigation was carried out as it relates to Ms. LaCosta-Franco's phones. It was just this month (February 2026) that the government pursued a warrant to search the contents of the phones. If the Philadelphia Police Department and/or the federal government believed that the cell phones contained evidence related to the investigation of Ms. LaCosta-Franco's charged conduct, they should have acted with requisite diligence rather than inexplicable, unconstitutional delay. In this regard, the extended seizure of the phones is unreasonable. *See Stabile*, 633 F.3d at 236 (quoting *McArthur*, 531 U.S. at 331-33); *see also Brown*, 2023 WL 8702145, at *3. The nearly

10

four-and-a-half-month delay in obtaining a warrant to search the phones constitutes a complete failure of diligence on the part of law enforcement.

Invoking both commonsense and the binding caselaw that governs this issue, the Court wrote in *Williams*: "This Court would doubtlessly have approved of the police sitting with the phone for two hours to ensure it was not the subject of tampering until [the warrant] was issued. But instead, the officers took the phone and deprived Defendant Williams of it for *four days* until obtaining a warrant. This factor weighs strongly against the Government." 2025 WL 3640894, at *12. Here, we have more than *four months*.

Ms. LaCosta-Franco urges the Court to suppress any evidence obtained from the phones, and any fruit of those searches, because of the government's extreme and undue delay in securing a timely warrant to search her cell phones. The Court need go no further.

### B.   The February 4, 2026 Warrant Lacks Probable Cause To Search Ms. LaCosta-Franco's Phones.

The February 4, 2026 warrant lacks probable cause to search Ms. LaCosta-Franco's telephones. Probable cause requires a nexus "between the place to be searched, the suspected criminal activity, and the items to be seized" so that belief "that evidence of an offense will be found at the place to be searched [ ] can be made by inference." *United States v. Bowers*, 548 F. Supp. 3d 504, 509 (W.D. Pa. 2021) (citing *United States v. Stearn*, 597 F.3d 540 (3d Cir. 2010); *United States v. Hodge,* 246 F.3d 301, 305-07 (3d Cir. 2001)). Thus, the "probable cause" standard requires the government to prove there was "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is determined under the totality of the circumstances. It is a "fluid concept" that depends on "the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced

to a neat set of legal rules." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006)) (additional citations omitted).

Here, a plain reading of the affidavit of probable cause to search Ms. LaCosta-Franco's cell phones reveals not one paragraph, nor even a single sentence, wherein the affiant refers to any evidence that Ms. LaCosta-Franco utilized her phone in connection with a suspected crime. There is simply no nexus provided.

Instead, the warrant affidavit walks through the circumstances of Ms. LaCosta-Franco's arrest and the recovery of alleged illicit substances. The "Facts Establishing Probable Cause" section of the warrant, *see Ex. A* ¶¶8-20, does not purport to establish a nexus between the phones and a crime. If anything, it reads like a probable cause to arrest affidavit detailing with a high level of specificity where alleged narcotics were recovered and the background of law enforcement's stolen vehicle investigation. Indeed, the only mention of the telephones in this section is that they were recovered from her pockets along with alleged fentanyl and heroin. *Ex. A* ¶¶14-15. Using a crafty partition between paragraphs, the government intimates that Ms. LaCosta-Franco tried to conceal her phones as opposed to the alleged pharmacy of drugs in her pocket—but reading ¶14 and ¶15 together, belies that conclusion.[5]

The final mention of the phones in this section is: "Investigators do not know the telephone numbers assigned to SUBJECT DEVICE-1 or SUBJECT DEVICE-2. However, based on my training and experience, I know that it is common for drug traffickers to utilize different cellular

---

[5] This should be undisputed. Body Worn Camera footage clearly demonstrates that as Ms. LaCosta-Franco opened the door of the truck to exit the vehicle and converse with law enforcement, one of her cell phones fell to the ground. Law enforcement watched Ms. LaCosta-Franco exit the vehicle, retrieve the phone, and then place the phone in her pants pocket. Putting a phone in one's pocket—while law enforcement watches—is hardly an attempt to conceal. It would be fair for the government to assert that Ms. LaCosta-Franco then passively resisted arrest while repeatedly demanding to know the reason for her arrest; the footage, by contrast, does not support the assertion that she attempted to conceal a telephone. *Ex. D*, Body-Worn Camera, Philadelphia Police Department, depicting Ms. LaCosta-Franco's arrest.

telephones or devices to conduct their drug trafficking activities in order to avoid law enforcement detection." Ex. A at ¶ 20. In the following section, "Request to Search Cellular Telephones," Special Agent Scanlan pads this assertion with the above stock language regarding what he considers to be common practices of drug traffickers. No additional fact specific to Ms. LaCosta-Franco, no case-specific objective indicia that evidence of a crime would be found on her phone, is contained in the warrant.

Recently, in *Williams*, this Court cautioned against the attenuated inference that evidence of a crime automatically entails probable cause to search a suspect's cell phone. Using a jaywalking analogy, the Court emphasized the dangers of untethered governmental intrusion into a person's digital data and reaffirmed that searches must be tailored to the alleged crime:

> On the Court's inspection of the application for the November 26 Philadelphia Warrant, there are no allegations that a cell phone was used in the commission of the actual offenses or observed at any of the crime scenes. Rather, the warrant application seems to essentially boil down to "evidence of crimes is usually found on a cell phone." By implication, therefore, the Government here once again asks this Court to apply an unprincipled and boundless rule that whenever any crime is committed, the police can get a warrant to search the suspect's phone.

> This Court cannot countenance the generalized argument that criminals tend to use phones and that therefore if you suspect someone of a crime, you get unfettered access to their phone. That same logic would apply with equal force to a jaywalker. The Government's jaywalking case would doubtlessly be improved by GPS evidence showing that the jaywalker carried their phone and was in the location the Government alleges they jaywalked. But no reasonable person could possibly think that this flimsy justification could support the search and seizure of the entirety of the contents of the perpetrator's cell phone.

*Id.* at 2025 WL 3640894, at *14.

In all material ways, Ms. LaCosta-Franco's case is a real-life analogue of the Court's jaywalking hypothetical. The ostensible probable cause offered in the affidavit does not provide a sufficient nexus between the recovered controlled substances and the location to be searched— Ms. LaCosta-Franco's telephones. Special Agent Scanlan's affidavit in support of the February 4,

13

2026 warrant ignores the black letter principle that probable cause must be tethered "to particular factual contexts," *Miknevich*, 638 F.3d at 182, and not sweeping generalizations. Because the warrant is devoid of facts connecting Ms. Lacosta-Franco's use of her cell phones with a crime, the evidence recovered from her phone, and its fruits, must be suppressed.

### C. The February 4, 2026 Warrant Is An Unconstitutional General Warrant And Fails The Particularity Requirement.

Another framing of the infirmity at issue is that the warrant is unconstitutionally general, lacking in requisite particularity. Attachment B to Special Agent Scanlan's affidavit makes clear that the *entirety* of Ms. LaCosta-Franco's phones is fair game for a search. Such unlimited foraging was recently rebuked by this Court. *See Williams,* 2025 WL 3640894, at *1.

A general warrant "vests the executing officers with unbridled discretion to conduct an exploratory rummaging" through a person's belongings in search of criminal evidence. *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 149 (3d Cir. 2002) (citations omitted). To guard against general warrants and limit officer discretion, courts require warrants to specifically identify the items to be seized by their relation to designated crimes. *See United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010); *United States v. Perez*, 712 F. App'x 136, 139 (3d Cir. 2017). "The particularity principle means that, even with probable cause that a crime has been committed and a judicial officer's legal blessing to search a particular place, the parameters of the search cannot go beyond the particular limits in the warrant." Andrew Guthrie Ferguson, *Digital Rummaging*, 101 Washington University L. Rev. 1492, 1473 (2024). "A search that extends beyond the bounds of particularity into rummaging is an unreasonable search." *Id.*

"[E]xamples of general warrants are those authorizing searches for and seizures of such vague categories of items as 'smuggled goods,' 'obscene materials,' 'books, records, pamphlets,

14

cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas,' 'illegally obtained films,' and 'stolen property.'" *$92,422.57*, 307 F.3d at 149 (internal quotation marks omitted). "[A] failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (citation omitted).

Here, the warrant had the guise of particularity, with attached lists of categorized items to be searched. Under a cursory inspection, the lists satisfied the magistrate judge that the warrant did not breach the privacy safeguards of the Fourth Amendment. But reviewed more closely, and in their totality, the authorized items to be seized encompassed nearly the entirety of Ms. LaCosta-Franco's digital data. With unfettered discretion to sift through the most intimate details of her life, the government wielded the ultimate abuse: warrants designed for exploratory rummaging, lacking any semblance of particularity that might define the scope of the authorized search. *See Kentucky v. King*, 563 U.S. 452, 459 (2011).

On a macro level, the warrant is akin to a generalized fishing expedition. Paragraph 1 at (a) through (f), as set forth in Attachment B to the warrant, seeks to rummage through any and all applications on the phones over the span one month. Paragraph 3 at (a) through (c) allows limitless information related to Ms. LaCosta-Franco's travel. Thus, while Attachment B to the phone warrant purports to offer particularity, in that it includes a list of data sought, it essentially enables law enforcement to capture the entirety of the data in the phones. Attachment B might as well ask for "all contents of" her phones.

15

As courts have increasingly recognized, cell phones are unique in that—today—they are extensions of every facet of life. Cell phones serve as our calendars, our banking systems, location monitors, correspondence, health monitors, and so much more. The affidavit of probable cause does not establish a sufficient nexus between all of the items sought and the charged conduct. In fact, there is no allegation that the phones are connected to Ms. LaCosta-Franco's charges. For example, the timeframe contemplated by the warrant is not particularized to the alleged criminal conduct. Ms. LaCosta-Franco is charged with discreet conduct occurring on one date. There is no indication in the warrant of any criminal conduct that occurred before the day of her arrest. Thus, the warrant arbitrarily extends the timeframe for the search for one month. Moreover, tracking Ms. LaCosta-Franco's movements and scrutinizing her personal photographs during the time impermissibly infringes on her privacy. *Galpin*, 720 F.3d at 446. In addition, the items listed in paragraphs (c) through (d) "[a]ny information related to . . ." and paragraph (f) "all bank records, checks, credit card bills. . . ."— is a quintessential generalization. *$92,422.57*, 307 F.3d at 149.

On a micro level, the affidavit of probable case fails to connect any alleged criminal conduct to Ms. LaCosta-Franco's phones—both a probable cause problem as detailed above but also a particularity problem. *See*, Ex. A. For example, there is no justification for obtaining evidence that tracks Ms. LaCosta-Franco's movements over the course of *every day* for over one month. As a result, and putting aside the nexus problem, the warrant offends the Fourth Amendment's particularity requirement because the government asks to search the whole phone— not a subset of applications or data that are likely to hold evidence of a crime. Special Agent Scanlan's averments that the phones *may* contain evidence *commonly* or *often* associated with drug trafficking fails to meet the Fourth Amendment's demand.

16

As a result, the evidence obtained from Ms. LaCosta-Franco's cell phones, and its fruits, must be suppressed. *See Christine*, 687 F.2d at 758 ("It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed. The cost to society of sanctioning the use of general warrants—abhorrence for which gave birth to the Fourth Amendment—is intolerable by any measure. No criminal case exists even suggesting the contrary.").

D.  *The February 4, 2026 Warrant Is Overbroad.*

In addition to being a general warrant, the February 4, 2026 warrant is overbroad because it seeks access to all the contents of Ms. LaCosta-Franco's phones without sufficient justification. As opposed to a general warrant, an overly broad warrant "describe[s] in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause." *$92,422.57*, 307 F.3d at 149 (internal quotation marks omitted). To tell whether a warrant is overbroad, courts compare "the scope of the search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit." *In re Impounded Case*, 840 F.2d 196, 200 (3d Cir. 1988). To this end, "the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate" to justify the search. *United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006).

The details in Attachment B are a pretext for an impermissible, limitless search through all data predicated upon Agent Scanlan's mere hunches. In addition, the warrant seeks all of Ms. LaCosta-Franco's movements and location data over the course of every hour, every day for over one month without any context or nexus to the charged conduct. In short, the affidavit and Attachment B make clear that the *entirety* of the phone is fair game for a search. Such unlimited

17

foraging offends this Court's warning in *Williams,* 2025 WL 3640894. This Court must not condone the unlimited fishing expedition into Ms. LaCosta-Franco's digital data.

Because the warrant is overbroad, the evidence extracted from Ms. LaCosta-Franco's phones must be suppressed. Likewise, all fruits resulting from the unconstitutional seizure and search of Ms. LaCosta-Franco's phones must be suppressed. *See Wong Sun*, 371 U.S. 471; *Coggins*, 986 F.2d at 653.

### III.   CONCLUSION

Exclusion is a significant remedy. But greenlighting this warrant would spell a much greater societal consequence. There is no way to save this warrant without holding, as a matter of law, that if a person possesses a large quantity of narcotics, law enforcement has probable cause to search the contents of their cell phone. It is a leap with no basis in law. The constitution cannot withstand it.

Respectfully submitted,

*/s/ Jeremy Isard*
JEREMY ISARD
Assistant Federal Defender

18

**CERTIFICATE OF SERVICE**

I, Jeremy Isard, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of the Defendant's Motion to Suppress Cell Phone Data to be filed and served via Electronic Case Filing notification upon Ashley Nicole Martin, Assistant United States Attorney, United States Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

*/s/ Jeremy Isard*
JEREMY ISARD
Assistant Federal Defender

DATE:        February 27, 2026

19