**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA      :
     :
        v.               :      CRIMINAL NO. 2:26-CR-27
     :
GRISELLE LACOSTA-FRANCO      :

**<u>MEMORANDUM</u>**

## I.    Introduction

This is the second time in recent months that this Court has been called on to address the constitutionality of cellphone searches and seizures. To be sure, the places and things that might be searched have changed since the Fourth Amendment's ratification. However, this technological acceleration has not altered the heartland principle that lawful warrants must contain probable cause.

We often refer to cellphones as smart phones. They are portable mini-computers – ubiquitous in our society. We all rely on them in our daily lives; they have become our primary method of communication replacing landlines, they have replaced personal computers in many households, their navigation tools replaced our paper maps, there is no longer a need for file cabinets as they retain our medical history, banking records, our family photographs, correspondence and often host personal diaries replacing the need to hid a paper journal under the mattress. It has

become commonplace for people to have two cellphones, one for work and another personal.[1]

Officers must build a bridge before intruding on a defendant's Fourth Amendment privacy interests. There is no question that some criminals also use cellphones in furtherance of their crimes. But the ubiquity of cellphones does not, by itself, form the requisite nexus to search the device. *See United States v. Williams*, No. CR 25-183-GAW-1, 2025 WL 3640894, at *1 (E.D. Pa. Dec. 16, 2025) (Weilheimer, J.). That nexus needs to be established within the four corners of the warrant. *United States v. Stearn*, 597 F.3d 540, 549 (3d Cir. 2010). Probable cause does not require direct evidence, but it does require a nexus between the place to be searched and the crimes charged. *Stearn*, 597 F.3d at 558-559. The fact that a person was arrested <u>and</u> possesses a cellphone, without more, does not build that bridge.

In that vein, upholding a cellphone warrant relying entirely on an officer's training and experience would mean that any phone recovered from an arrestee is subject to search for any crime imaginable. That unlimited principle without case-specific relation between the phone and the crimes charged, offends *Riley v. California*, 573 U.S. 373 (2014), and the Fourth Amendment. This Court is unwilling to create a limitless principle for searching cellphones. As there is no nexus created in the subject warrant, Defendant's Motion to suppress the evidence relevant to the February 4, 2026, warrant is granted.

---

[1] The Court takes judicial notice that it is the common practice of most of jurists of in the Eastern District of Pennsylvania as well as the majority of Assistant United States Attorneys that appear before them to possess two cellphones; one for work and the other personal.

## II.    Background[2]

At 10:33 a.m. on September 22, 2025, a Philadelphia Police Department (PPD) patrol vehicle license plate reader passed a 2021 silver Dodge Ram (Truck) with Pennsylvania license plate #ZXH-3735.  The Truck, parallel parked outside of 3444 Shelmire Avenue in the Mayfair section of Philadelphia, alerted as stolen.  PPD plainclothes officers responded to the area and observed the Truck unoccupied.  The officers set up unmarked surveillance in the area and kept watch on the Truck.

A short time later, the officers observed Defendant, later identified as Griselle LaCosta-Franco, walk up to the Truck and place an object in the rear passenger's seat.  Next, the Officers observed Defendant enter the front driver's seat.  The plainclothes officers called for uniform patrol officers in the area to respond.

Upon arrival uniform officers approached the Truck and observed Defendant in the front driver's seat.  As officers approached, the Defendant exited the driver's side door, dropping some items on the ground which she picked up and placed into her pocket.  Body-worn camera footage of the encounter depicts Defendant wearing blue latex gloves as well as a cross-body bag over her shoulder.

The Defendant resisted the officers' attempts to detain her, repeatedly slipping her cuffs.  DEA Warrant, 2/4/26, ¶ 14. Officers ultimately arrested the Defendant and recovered the following from her person:

1. **A navy-blue Apple iPhone (Subject Device 1);**

2. **An Apple iPhone in a black case (Subject Device 2);**

3. 50 blue glassine baggies containing fentanyl;

---

[2]    The parties stipulated to many of the facts at the March 11, 2026, suppression hearing.

4. A vial containing heroin;

5. a container of "crack" cocaine;

6. multiple prescription pills; and

7. 10 suboxone strips

DEA Warrant, 2/4/26, at ¶ 15.[3]

The plainclothes officers conducted an inventory search of the Truck. The officers recovered two clear, heat-sealed bags containing roughly 1500 grams of heroin and drug paraphernalia. DEA Warrant, 2/4/26, at ¶ 16-17. PPD officers called the Drug Enforcement Agency (DEA) and Task Force Officers responded to the scene. The DEA recovered the narcotics from the Truck and transported them to the DEA Northeast Laboratory. Defendant was arrested on September 22, 2025, and charged by local authorities with possession of a stolen vehicle (the Truck). No drug charges were filed against the Defendant at the time of her arrest. The cellphones remained in PPD custody until October 13, 2025, at which point they were transferred to the DEA.

On January 15, 2026, the Defendant was indicted with one count of possession with intent to distribute 1,000 grams or more of heroin and one count of possession with intent to distribute fentanyl, heroin, and crack-cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and (b)(1)(C). On February 4, 2026, the Government obtained a

---

[3]    The Government's opposition memorandum refers to other items seized at the time of the Defendant's arrest, but those items are not referenced in the search warrant and therefore cannot be considered when determining if probable cause exists within the four corners of the warrant. The Court limits its consideration to the information included within the warrant.

warrant to search the contents of the two cellphones recovered during Defendant's arrest for specific information related to the charged narcotics offenses and potential conspiracy charges.[4]

In support of the application for the warrant a DEA Special Agent submitted a forty-two-paragraph affidavit of probable cause (DEA Warrant, 2/4/26). The affidavit recounts much of the above information and documents additional items recovered from the Truck during the inventory search, including the following:

> [PPD] located a navy-blue backpack in the rear passenger's seat of the [Truck]. The backpack contained multiple black plastic bags. Inside of the black plastic bags were blue latex gloves which were consistent with the blue latex gloves [Defendant] was wearing at the time of her arrest, a plastic bag with a brown powdery substance inside of it, later determined to be AnaSed, and a Pennsylvania driver's license #30451867 with [REDACTED] date of birth [REDACTED]. Officers located another black bag inside of the plastic bags with a white powdery substance inside of it. The DEA Northeast Laboratory determined that the white substance was cocaine and weighed approximately 17.2 grams. The other substances seized from the trunk of the Dodge Ram were tested by the DEA Northeast Laboratory and the substances identified were as follows O6-Monocetylmorphine approximately 49.9 grams, fentanyl approximately 52.5 grams, and approximately 10.189 grams fentanyl. Officers additionally recovered a pill bottle with the name [REDACTED] listed as the patient.

> Inside of the black plastic bag, officers also recovered new and unused drug packaging materials, "SOS" stamped baggies, glassine baggies, and rubber bands. There were also cardboard boxes with blue glassine baggies, consistent with the glassine baggies found on [Defendant] at the time of her arrest, and three digital scales in the bag.

DEA Warrant, 2/4/26, at ¶¶ 17-18.

---

[4]    Notably, Ms. Lacosta-Franco is the sole defendant listed on the indictment. The search warrant was sought after several weeks of failed negotiations regarding potential cooperation.

The *facts* surrounding the circumstances of the Defendant's arrest end here. The balance of the affidavit establishes the affiant's training and experience with respect to cellphones and general knowledge of how they are used by drug traffickers. Paragraph 22 is representative on this front.

> I also know that those involved in drug trafficking communicate with associates using cellular telephones to make telephone calls. If they are unable to reach the party called, they frequently leave voicemail messages. I am aware that Appel-based and Android-based phones download voice mail messages and store them on the phone itself is that there is no need for the user to call in to a number at a remote location and listen to the message. In addition, I know those involved in drug trafficking communicate with associates using cellular telephones and tablets to send e-mails and text messages and communicate via social media networking sites. By analyzing call and text communications, I may be able to determine the identity of co-conspirators and associated telephone numbers, as well as if there were communications between associates during the commission of the crimes.

*Id.* at ¶ 22.[5]

Defendant filed a motion to suppress all evidence obtained via the warrant on the following grounds: (1) the seizure of the phones was itself unreasonable; (2) the warrant lacks probable cause sufficient to search the contents of Defendant's phones; (3) the warrant is constitutionally defective as a general warrant and fails the particularity requirement; and (4) The warrant is overbroad. *See* Def's Mot. to Suppress (Dkt. 18).

The Government filed a sealed response in opposition asserting: (1) the search warrant is supported by probable cause; (2) any delay in applying for the warrant was reasonable in light of its diligent investigation; (3) the warrant is sufficiently

---

[5] Paragraphs 5, 20-21, and 23-42 also discuss the affiants knowledge regarding how cellphones are used.

particular and not overbroad; and, alternatively (4) this Court should find that the good faith exception to the exclusionary rule applies to any defects that may attend the warrant. *See* Govt's Opp'n (Dkt 22). At the Motion to Suppress hearing the Government admitted the subject search warrant into evidence but presented no further testimony or evidence arguing that probable cause exists within the four corners of the warrant. The Court heard argument on the Motion, and it is ripe for ruling. For the following reasons, Defendant's Motion to Suppress is granted.

## III.    DISCUSSION

### A. Legal Standard

The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. CONST. amend. IV. This guarantee requires that "all searches and seizures must be reasonable." *United States v. Rashwan*, 684 F. Supp. 3d 347, 353 (E.D. Pa. 2023) (Schmehl, J.) (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011). Warrantless searches or seizures are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is a search incident to arrest. *See United States v. Matthews*, 532 F. App'x 211, 218 (3d Cir. 2013) (quoting *Arizona v. Gant*, 556 U.S. 332, 335 (2009) (observing that police may search incident to arrest only the space

within an arrestee's immediate control, such as the area from within which he might gain possession of destructible evidence).

The contents of a cellphone cannot be searched simply because it is seized incident to arrest. *Riley v. California*, 573 U.S. 373, 386 (2014). Officers must have probable cause to obtain a warrant to access such data. *Id.* Probable cause in this context requires the government to make an objectively reasonable showing that there exists "a fair probablilty that contraband or evidence of a crime will be found" on the smartphone. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Probable cause must be evaluated under the totality of the circumstances – for it "is a fluid concept turning on the assessment of probabilities in particular factual contexts not readily, or even usefully reduced to a neat set of legal rules." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (cleaned up). Although the concept is flexible, the reviewing magistrate's charge undoubtedly includes an evaluation of the veracity and the basis of knowledge of persons supplying information contained in an affidavit of probable cause. *See Gates*, 462 U.S. at 238, 241 (recognizing the value of corroboration of details *via* informant and independent police work). An affidavit relying on mere conclusory statements will not suffice. *Id.* at 239.

"The decision of the magistrate "should be paid great deference. This, however, does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002). District courts are restricted to considering only the information contained in the "four

8

corners" the affidavit before the magistrate – but still with an eye towards the veracity and basis of knowledge that inform the warrant. *United States v. Gorny*, No. CRIM. 13-70, 2014 WL 2860637, at *4 (W.D. Pa. June 23, 2014) ( first citing, *United States v. Whitner*, 219 F.3d 289, 295-296, and *Gates*, 462 U.S. 238-239).

Relatedly, the Fourth Amendment also prohibits general warrants that would allow exploratory rummaging in a person's belongings.[6] *United States v. Perez*, 712 F. App'x 136, 138 (3d Cir. 2017) (quoting *Andresen v. Maryland*, 427 U.S. 463, 479 (1976)). To satisfy the Fourth Amendment's particularity requirement the warrant must clear three hurdles. First, the warrant must identify the specific offense for which the police have established probable cause. Second, it must describe the place to be searched. Finally, the warrant must specify the items to be seized by their relation to designated crimes. *Id.* at 139 (citation omitted). Put simply, "a warrant may not be issued unless the scope of the authorized search is set out with particularity." *United States v. Bellucci*, No. 3:23-CR-083, 2023 WL 8528433, at *6 (M.D. Pa. Dec. 8, 2023) (cleaned up). The particularity principle is designed to eliminate the discretion of the officer in the execution of the warrant. *Perez*, 712 F. App'x at 138.

---

[6]    As the Supreme Corut observed in *United States v. Carpenter*,

> "[t]he Founding generation crafted the Fourth Amendment as a response to the reviled general warrants and writs of assistance of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity. In fact, as John Adams recalled, the patriot James Otis's 1761 speech condemning writs of assistance was the first act of opposition to the arbitrary claims of Great Britain and helped spark the Revolution itself."

*Carpenter*, 585 U.S. 296, 303-304 (2018) (quoting *Riley*, 573 U.S. at 403) (cleaned up).

Overbreadth is a related, but distinct, warrant defect. An overly broad warrant describes in both specific and inclusive generic terms the items to be seized, but also authorizes the seizure of items for which there exists no probable cause. *Bellucci*, 2023 WL 8528433, at *6. Courts have recognized that some searches require officers to review a large collection of items. The fact that some innocuous items will be examined, at least cursorily, to sort what falls within the scope of the warrant from what does not, does not automatically create an overbreadth issue. *Id.* (citing *United States v. Karrer*, 460 F. App'x 157, 162 (3d Cir. 2012).

> The breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate. The use of generic classifications in a warrant is acceptable when a more precise description is not feasible. Technical requirements of elaborate specificity have no proper [application] in this area.

*Id.*, (cleaned up) (quoting first *United States v. Christine*, 687 F.2d 749, 760 (3d Cir. 1982) and then quoting *Karrer*, 460 F. App'x at 163).

### B. The Government's Seizure of Defendant's Phones

For the purposes of her Motion, Defendant does not dispute that the search incident to arrest allowed law enforcement to seize the cellphones found on Defendant's person. Def.'s Br. at 7. Defendant instead takes the position that the Government's failure to seek a search warrant for roughly four and a half months (between PPD's initial September 22, 2025, arrest and the February 4, 2026, warrant application) constitutes an unreasonable delay, violating Defendant's Fourth Amendment rights. *See id.*

10

Conversely, the Government asserts that it diligently pursued its investigation of the Defendant and that once it "made the decision to pursue additional charges, [it engaged in] plea and cooperation discussions with the Defendant." Govt's Opp'n at 19. The Government's argument follows that any cooperation on the part of Defendant would necessarily contemplate access to her cellphones and that a brief delay while ironing out the details of these negotiations was geared towards conserving government resources, which in turn would benefit Defendant at sentencing. In a reply to Government's Opposition, Defendant suggests that this "maximum credit" argument is misleading because Defendant "could have provided the passwords during or after search and received full credit for giving the Government full access to all the data contained on her phone."[7] Def.'s Reply at 3 (Dkt 25).

A seizure, lawful at its inception, can violate the Fourth Amendment when its execution unreasonably infringes possessory interest protected by the Fourth Amendment's injunction against unreasonable seizures. *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011) (quoting *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)). "To determine whether the seizure became unreasonable, [courts] must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged

---

[7]     Defendant cites no authority for this point. Separately, Defendant submitted a reply brief to Government's opposition in violation of this Court's Guidelines. *See* Judge Weilheimer's Guidelines § X(C) ("Reply briefs are not permitted without leave of court."). Generally, this Court strikes filings submitted in violations of its protocols. In this case the Court does not cite Defendant's reply brief for its substance but only to flesh out the arguments of the parties.

to justify the intrusion." *Id.* (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). When the nature of the seizure is minimally intrusive to the Defendant's extant Fourth Amendment interests, the counterbalancing governmental interest can support a seizure based on less than probable cause. *Place*, 462 U.S. at 703.

As an initial matter, Defendant's comparison to this Court's recent decision in *United States v. Williams* is inapt. *See* 2025 WL 3640894, at \*7. In *Williams* this Court found that a four-day seizure of Defendant's cellphone was unconstitutional because no exception to the warrant requirement applied. Notably, the seizure of Williams' cellphone was not accompanied by his arrest. In fact, at Williams' suppression hearing the officers acknowledged that there was no probable cause to arrest him but seized his phone anyway. *See id.* at \*8 n. 8-9. The result was the four-day, warrantless seizure of the defendant's phone *while he remained un-arrested and free*. *See id.* at \*8 n. 8 ("The issues in this case arise from the government's maintaining possession of the cellphone without a warrant after the conclusion of the *Terry* stop.").

Here, Defendant's possessory interest in her cellphones is poles apart from the possessory interest present in *Willliams, supra*. First, Defendant's incarceration is wholly concurrent with the Government's seizure of her phone.[8] As a practical

---

[8]    Defense counsel argues, in his unauthorized, Reply that "[t]he government's suggestion that incarcerated persons automatically lose their possessory interest in their phones during incarceration portends a dystopian future." Def.'s Reply at 5. This Court appreciates counsel's fear of the Orwellian, but this argument overstates the matter. The United States Supreme Court has long acknowledged that although prisoners "enjoy many protections of the Constitution … imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

matter, cellphones are not permitted in jail and Defendant's property interest is diminished because of her status as an inmate. *United States v. Wright*, 534 F. Supp. 3d 416, 427 (M.D. Pa. 2021). Further, there exists a procedural mechanism in the Federal Rules of Criminal Procedure to seek the return of certain property. Fed. R. Crim. P. 41(g). There is no record of Defendant employing this procedure and failure to seek the return of her property impacts this Court's view of any adverse impact on her now asserted Fourth Amendment rights in the context of the seizure. *See id.* (citing *Stabile*, 633 F.3d 235-236).

Separately, the Court is not troubled by the Government's alleged delay in seeking the warrant. First, this matter was not adopted by the Government until January of 2026. The Government applied for the search warrant the following month. Although some courts have observed that "delay is delay" no matter the possessor,[9] this Court recognizes that divergent reasons for retaining the phone may exist between different sovereigns (here Philadelphia and the federal government). Even counting the entire delay against the Government as listed in the caption, a less than five-month delay, during a period where the Defendant has been continuously incarcerated, does not offend the constitutional reasonableness in this matter. *See Wright*, 534 F. Supp. 3d at 427 ("[C]ourts have found delays of a year or more reasonable.").

---

[9]     *In re Application for Search Warrant*, 527 F. Supp. 3d 179, 183 (D. Conn. 2020).

### C. The Probable Cause Inquiry

Defendant argues that the Government's warrant application lacks probable cause to search the contents of her cellphone. Specifically, Defendant asserts that the Government failed to establish a sufficient factual nexus between the recovered narcotics and the recovered cellphones. Defendant further asserts that simply recounting the facts of her arrest and combining that recitation with an officers training and experience that drug traffickers use their phones in furtherance of their crimes, is insufficient to make an objectively reasonable showing of probable cause – absent some showing that the phones are somehow linked to the charged crimes. Def's Br. at 12-13

In response, the Government cites a bevy of caselaw observing scenarios where (in its view) the combination of multiple cellphones and drugs have withstood probable cause challenges. Additionally, the Government argues that great weight is owed to law enforcement's training and experience in search warrant applications. Finally, the Government reminds this Court of its limited role in the after-the-fact evaluation of a neutral magistrates finding of probable cause. Govt's Opp'n at 15-17.

In the wake of *Riley*, courts have struggled to adapt Fourth Amendment search doctrines developed for physical spaces to digital contexts. *See Perez*, 712 F. App'x at 139. At the suppression hearing, both sides acknowledged that there is no binding authority on all-fours with this matter.[10] This Court's research yields the same

---

[10]   This strikes the Court as unusual. Smartphones are a relatively new technology (as compared to the Fourth Amendment) but not so new that there would be a dearth of controlling authority mirroring this factual context. Perhaps this speaks to the case-by-case nature and general aversion

14

result. That said, the trend of persuasive authority counsels that an affidavit of probable cause must include objective, offense-specific facts – be they direct or indirect – connecting the crimes charged with the specific use of the cellphone and its contents. *See United States v. Ramirez*, 180 F. Supp. 3d 491, 495-496 (W.D. Ky. 2016) (citing *Gorny*, 2014 WL 2860637, at \*4) (holding possession of a cellphone combined with affiant's "training and experience" is insufficient by itself to establish a nexus between the cellphone and any alleged drug activity); *see also United States v. Merriweather*, 728 F. App'x 498, 506 (6th Cir. 2018) (acknowledging and distinguishing the affidavit in *Ramirez*); *United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021) (declining to engage the nexus issue in the context of cellphones but acknowledging that it has added importance post-*Carpenter*); *United States v. Opoku*, 556 F. Supp. 3d 633, 644 (S.D. Tex. 2021) (requiring offense-specific facts to establish a nexus between charges and cellphone search); *In re Search of One Device & Two Individuals Under Rule 41*, 783 F. Supp. 3d 183, 192-193 (D.D.C. 2025) (discussing lack of nexus and the insufficiency of "training and experience" alone in the context of possessory offenses with no co-conspirators and the distinction between the search of a home and a phone).

To be sure, a wooden rule applicable to all probable cause inquiries is unworkable. However, a case-by-case review of the post-*Riley/Carpenter* cellphone

---

to wooden rules in the realm of probable cause. This could also speak to the obvious weakness of the Government's warrant in this case.

15

cases cited by the Government supports the trend outlined above.[11]  For example, the Government cites *United States v. Tutis*, 845 F. App'x 122 (3d Cir. 2021) for the proposition that "the mere fact that the Defendant possess multiple cell phones" is sufficient evidence of drug trafficking to find probable cause to search the contents of the phones.  Govt's Opp'n at 15-16.  In *Tutis*, the Third Circuit examined the sufficiency of an affidavit granting the Government a roving wiretap.  The district court denied Tutis' motion to suppress.  On appeal, the defendant argued (as the Defendant does here) "that the affidavit contained only barebones, conclusory" information. *Id.* at 124.  In affirming the district court's finding that the affidavit contained sufficient facts to establish probable cause, the panel observed that

> [defendant], his wife and his brother were subjects of a long-term, state and federal investigation into multiple drug trafficking rings in New Jersey.  It also recounted tips from a confidential informant such as instructions, that were provided by [defendant], to use code words to refer to specific drugs … The affidavit also averred that [defendant] obtained fraudulent state-issued identifications and used multiple phones to avoid interception by police.

*Id.* at 124-125 (cleaned up).

Unfortunately for the Government, *Tutis* does not support the view that multiple cellphones alone can form the basis for probable cause.  Distinct from this case, the investigation in *Tutis* had been going on for months and included information from a confidential informant confirming drug trafficking activity, and

---

[11]    To be clear, this Court does not take the position that all Circuit precedents predating *Riley* and *Carpenter* are inapplicable in the smartphone context.  But our Supreme Court has made clear that cellphones implicate a vehicle for the "privacies of life" unimaginable just a generation ago. *See Williams*, 2025 WL 3640894, at *6 (quoting *Riley*, 573 U.S. at 403); *see also Carpenter*, 585 U.S. at 306 (recognizing that smartphone technology does not fit neatly under existing precedents).

the concealment of that activity.  None of those facts are presented in the affidavit for probable cause at issue here.[12]

Next, the Government cites *Wright*, 534 F. Supp. 3d 416.  As discussed above, *Wright* dealt with a defendant's assertion that thirteen months between his arrest and the application for a search warrant was unreasonable and violative of the Fourth Amendment.  *Wright* did not directly address probable cause to search the contents of the defendant's phone.  In fact, the court in *Wright* went out of its way to say that "[g]iven the connection between possession of multiple cellphones[13] and drug trafficking, state investigators reasonably believed that **the phones themselves were evidence of drug trafficking and the phones' evidentiary value did not hinge on the contents**[.]" *Id.* at 426 (emphasis added).

To its credit, the Government does point to some authority containing fact patterns tending to support the position that the affidavit here is enough to establish probable cause.  Two such cases are *United States v. Cook*, No. 3:CR-16-312, 2021 WL 1534980 (M.D. Pa. Apr. 19, 2021) and *United States v. Carey*, No. 3:CR-18-037, 2020

---

[12]     Further, in footnote commentary regarding the use of a confidential informant, the panel in *Tutis* observed its prior holding in *Stearn* that "a magistrate may issue a warrant relying primarily upon the statements of a confidential informant, so long as there is independent police corroboration of details of an informant's tip." *Id.* at 125 n.9 (citing *Stearn*, 597 F.3d at 555 (3d Cir. 2010) (cleaned up).  *Stearn* highlights a level of corroboration that strongly suggests more than just an officer's training and experience is required to establish probable cause to search the contents of a cellphone.

[13]     *Wright* cites both *Tutis*, *supra*, and *United States v. Robinson*, 529 F. App'x 134 (3d Cir. 2013) for the proposition that the presence of multiple cellphones is indicative of drug activity.  As stated above, *Tutis* involved a plethora of evidence, including statements from a confidential informant, sufficient to establish probable cause.  Separately, the panel in *Robinson* (a pre-*Riley* case) observed that multiple phones on the dashboard of a vehicle during a traffic stop were enough to establish **reasonable suspicion** sufficient to expand the scope of the officer's initial traffic stop. *Robinson*, 529 F. App'x at 138-139.  *Robinson* does not once address the concept of probable cause to search the contents of cellphones or any other evidence for that matter.

WL 59607, (M.D. Pa. Jan. 6, 2020).  In both cases, the Honorable Malachy Mannion, ever mindful of the deferential standard afforded a magistrates determination, found relatively brusque affidavits of probable cause sufficient to uphold search warrants for the contents of cellphones.  *See Cook*, 2021 WL 1534980 at \*9; *Carey*, 2020 WL 59607 at \*2.  While both opinions cite *Riley* to highlight the warrant requirement for cellphones generally, this Court finds the analysis somewhat limited, as each case spends only a single paragraph on probable cause for the cellphone data.[14]

The Government also cites *United States v. Carothers*, No. CR 3:20-31-2, 2024 WL 4452053 (W.D. Pa. Oct. 9, 2024).  There, Pennsylvania State Police troopers arrested two individuals after a high-speed chase and found drugs, a digital scale, a firearm, and cash.  Citing *Carey*, and other cases, the court in *Carothers* held that the officer/affiant's training in experience was sufficient to establish the nexus between the cellphones and criminal activity.  Notably, the warrant in *Carothers* contemplated co-defendants and the indictments included a conspiracy charge.[15]  These facts alone distinguish that case from the one currently before the Court.

---

[14]     Nothing here is meant as a criticism of Judge Mannion's analysis in either opinion.  This Court recognizes his extensive experience as a Magistrate Judge prior to receiving his commission for his current seat.  However, this Court, as explained *infra*, is concerned with the limitless intrusion nexusless affidavits create in the context of cellphones.  An agent's affirmation that "individuals associated with the distribution of drugs often utilize multiple cellular telephones [and] often use cellular communications to arrange drug transactions," without more is insufficient in this Court's view.  *Carey*, 2020 WL 59607, at \*2 (cleaned up).

[15]     This Court has previously expressed its aversion for the co-defendant-equals-cellphone theory.  *See Williams*, 2025 WL 3640894, at \*14 (citing *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at \*8 (D. Conn. July 28, 2023) (observing that issuance of a warrant on the basis of evidence suggesting a minimal amounts of coordination between co-conspirators would essentially license automatic cellphone searches of any persons suspected of engaging in criminal conspiracies).  However, the Court concedes that a conspiracy containing multiple parties advances the ball forward in the probable cause analysis.

*Carothers* works as an excellent counterpoint to this analysis in at least one additional way. What this Court finds most troubling about *Carothers* is what the affiant makes plain in the warrant application. Besides for the typical "[i]n my experience, the sale of narcotics is nearly always carried out through the use of cell phones…" the affiant includes that they are "also aware that such criminals, *like law-abiding citizens*, will take photographs and videos using their cellular telephones of themselves with their friends, relatives, and associates and keep them on their cellular telephones." *Carothers*, 2024 WL 4452053, at *2-*3 (emphasis added). Saying the quiet part out loud, the affiant in *Carothers* highlights this Court's principal alarm with warrants based solely on "training and experience." The way in which these "training and experience" or "trust me" warrants divine a defendant's alleged cellphone use reveals nothing different than the way any free citizen uses a cellphone in the normal course.

A semantic exercise using the affidavit at issue is instructive on this point. Paragraph 21 of the DEA Warrant, 2/4/26, reads:

> Based on my training and experience, I know drug traffickers commonly utilize their cellular telephones to communicate with co-conspirators to facilitate, plan, and execute their drug transactions and may discuss the use of firearms to protect their product and proceeds or to otherwise further their criminal activities. For example, drug traffickers often store contacts, lists, address books, calendars, photographs, videos, audio files, text messages, call logs, and voice mails in their electronic devices, such as cellular telephones, to be used in furtherance of their drug trafficking activities.

DEA Warrant, 2/4/26, at ¶ 21. As an initial matter this Court highlights some facial issues with this paragraph and the warrant generally. No conspiracy has been

charged as a part of this indictment, and no co-conspirators have been charged either. Defendant alone is charged with two counts of possession with intent to distribute narcotics.[16]    Further, there were no firearms recovered from the Truck or from Defendant's person and the Defendant has not been charged with any firearms offenses.  This alone demonstrates that much of the foundation of the affidavit is drawn from stock language used in every warrant application to search a cellphone.[17] But most importantly, all one must do to watch the warrant collapse on itself is replace the references to this allegoric "drug trafficker" and drugs or criminal activity generally to realize that any one of us, or our family members' phones are subject to search.  "For example, ~~drug traffickers~~ [I] often store contacts, lists, address books, calendars, photographs, videos, audio files, text messages, call logs, and voice mails in their electronic devices, such as cellular telephones, to be used in furtherance of ~~their drug trafficking~~ [my life] activities.  *Id.*

"In addition, ~~drug traffickers~~ [Judges] sometimes use cellular telephones as navigation devices, obtaining maps and directions to various locations in furtherance of their ~~drug trafficking~~ [civic engagement] activities.  These electronic devices may also contain GPS navigation capabilities and stored information that could identify

---

[16]    Paragraphs 7, 27, and 39 each refer to some conspiracy that is not charged in this matter. DEA Warrant, 2/4/26, at ¶¶ 7, 27, 39.  Paragraph 7 states "there is probable cause to believes that [the phones] have been used in the commission of crimes, including violations of Title 21 United States Code, Sections 841(a)(1) and *846* (distribution of controlled substances *and conspiracy to commit controlled substances offenses*)."  *Id* at ¶ 7 (emphasis added).  It bears repeating that no Section 846 violation has been charged in this matter.

[17]    *See In re Search of One Device & Two Individuals Under Rule 41*, 783 F. Supp. 3d at 192 n.4 (observing that while experience is not static, it had been that court's experience that the same affiant on separate applications just recycles the same bare-bone narrative about their experiences).

where these devices were located." *Id.* at ¶ 26.  And the whole thing would carry on that way.  None of the paragraphs detailing the affiant's training and experience describe cellphone use unique to drug traffickers.  Each paragraph describes cellphone use and capabilities, generally.

This Court does not mean to make light of the training and experience of our brave men and women in law enforcement.  It is true that through training and experience many in law enforcement can perceive criminal activity or danger where the most observant of us would see nothing. But when it comes to establishing probable cause to sort through another's privacy, something more in the way of case-specific evidence must nudge training and experience across the finish line.  *See United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *6 (S.D.N.Y. Mar. 20, 2023) (citing *United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987)). This affidavit, and many of the affidavits in the cases cited by the Government, fail on this score.

The Court is wary of the thin branch on which it evaluates the facts before it. A quarter-century ago, then-judge Alito authored the panel decision in *United States v. Hodge*, which explained that direct evidence linking a place to be searched with a crime is not required for the issuance of a search warrant. 246 F.3d 301, 305 (3d Cir. 2001).  "Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." *Id.* at 305-306 (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).

In *Stearn*, the Third Circuit reaffirmed much of what *Hodge* and *Jones* recognized in the context of residential searches. *Stearn*, 597 F.3d 540, 559. The panel observed that a magistrates reasonable inferences should be supported by "three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's activities." *Id. Stearn* further observed that "the conclusions of experienced officers regarding where evidence of a crime is likely to be found" are one of many considerations that are neither required, nor exhaustive. *Id.* at 559-560. Other critical considerations establishing a nexus between a physical home and a defendant's drug dealing activities include: large-scale operations, a defendant's attempt to evade officers' questions about his address, the proximity of defendant's residence to the locations of criminal activity, probable cause to arrest the defendant on drug-related charges, and the top of concerned citizens concerning the address. *Id.*

The ubiquity and technology of smartphones occupy a unique space in the present-day and the Supreme Court has at least suggested in *Riley* and *Carpenter* that Courts should think about them differently. The Third Circuit has also observed this distinction. *Cf. Perez*, 712 F. App'x at 139 (observing in the general warrant context that the place to be searched encompasses much more information in a search of digital storage than in one of physical space). As noted above, other jurisdictions also observe this distinction. *See In re Search of One Device & Two Individuals Under Rule 41*, 783 F. Supp. 3d at 193 ("[S]earching a cell phone is different than searching

22

a home."). In fact, this advancement in technology often assists law enforcement in developing an abundance of probable cause. Stated differently, a defendant's particular and/or observed pattern of use of technology often forms the basis for law enforcement's belief that a crime is being committed. *Gorney, supra*, demonstrates this point.

There, Pittsburgh narcotics detectives conducted surveillance near the defendant's home as a part of an investigation into his alleged heroin trafficking, stemming from a prior undercover purchase. *Gorny*, 2014 WL 2860637, at *1. Police arrested the defendant and obtained search warrants for the contents of two cellphones found on his person during the arrest. *Id.* In his motion to suppress regarding associated firearms charges, the defendant argued that the affidavit did not provide a sufficient nexus that evidence of criminal activity would be found on his phones, as it "was not based on sufficient facts and relied too heavily on purported expert opinion-type submission of the detectives[.]" *Id.* at *4.

In denying the defendant's motion, the Court explained that the officers' training and experience, *combined with* the fact that defendant had provided officers with a cellphone number to use if they wished to purchase additional heroin formed a sufficient basis for probable cause. *Id.* at *5. The court stressed that detectives

> knew that he used his cell phone for other illegal activities, i.e., to facilitate his sales of narcotics [and] accepting [defendant's] arguments on these issues would basically require a finding of direct evidence by the detectives that they knew that he had drug evidence on his phones. But, the same is simply not required. A warrant is sufficient so long as the veracity and basis of knowledge of the persons providing the information is sufficient to provide a fair probability, under the totality

> of the circumstances, that evidence of criminal activity will be discovered in a certain place.

*Id.* at \*6-\*7 (cleaned up) (citing *United States v. Pearson*, 181 F. App'x 192, 195 (3d Cir. 2006)).   In sum, the magistrate in *Gorny* considered officers' training and experience combined with the knowledge from undercover operations that defendant had actually engaged in sales *via* his cellphone.   The latter portion is missing here. *Cf. United States v. Alexander*, 54 F.4th 162, 171 (3d Cir. 2022) (finding an objective likelihood of criminal activity sufficient to search a home where CI made controlled purchases near the residence and made statements to officers regarding controlled purchases and the defendant's travel back and forth between residence and known stash house with heavy bags); *United States v. Santos*, No. 24-2301, 2025 WL 2461770, at \*3 (2d Cir. Aug. 27, 2025) (finding the situation at bar fell "somewhere in between" a case with a detailed affidavit establishing a connection between the phone and the alleged crimes and an affidavit lacking any factual support whatsoever where there was video footage of defendant using phone just prior to crimes near the location; *but see United States v. Cain*, 795 F. Supp. 3d 645, 658 (E.D. Pa. 2025), *appeal docketed*, No. 25-2721 (3d Cir. Sept. 8, 2025) (finding probable cause did not exist to support search of defendant's electronic devices when both victims and victims' parents indicated that devices had been used to photograph minors).

This is not to say that the affiant in this matter needed to conduct an undercover buy through Defendant's cellphone to establish probable cause.   But *something* in the way of objective information related to Defendant's phones is needed

to buttress the officer's training and experience.[18]  *Cf. United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002) (finding that affidavit did not point to any indication that defendant kept evidence of charged crimes on his phones).  Instead, the Government asks this Court to endorse the view that "Defendant's possession of the cell phones is sufficient to create a nexus between the charged crimes and the cell phones."  *United States v. Johnson*, No. 2:17-CR-00243, 2019 WL 5288015, at *13 (W.D. Pa. Oct. 18, 2019) (citing *United States v. Brewer*, No. 1:13-CR-13-03, 2015 WL 2250150, at *4 (M.D. Pa. May 12, 2015), *aff'd*, 708 F. App'x 96 (3d Cir. 2017)).  The logical extension of this view would permit the magic words "training and experience" to justify the search of any phone for any crime imaginable.  *See Williams*, 2025 WL 3640894, at *9 ("This Court cannot imagine a crime from murder all the way down to jaywalking, for which a cellphone might not contain *some* iota of relevant evidence."; *see also In re Search of One Device & Two Individuals Under Rule 41*, 783 F. Supp. 3d at 189 (quoting *Carpenter*, 585 U.S. at 305) (stating that this sort of unbound police power ignores that a central aim of the Framers was to place obstacles in the way of too permeating police surveillance).

Although the Government points to a handful of cases that seem to embrace this approach, this Court believes the better analysis emerges from cases pointing to objective, crime-specific information related to the place to be searched.  For example, in *United States v. Stevenson*, No. CR 16-189, 2019 WL 4919671 (W.D. Pa. Apr. 4,

---

[18]    For example, information from a CI that they have purchased drugs *via* cellphone or an officer's observation of a defendant's pattern of behavior i.e., receives call and drives to a known drop off location for drugs.

2019), a defendant moved to suppress, *inter alia*, evidence recovered from cellphones pursuant to a warrant issued by a local magistrate. In denying defendant's motion to suppress the court observed law enforcement's determination that cellphones are tools of the drug trade and that "law enforcement observed a controlled buy take place within the vehicle *which was set up buy a cellphone call within the vehicle.*" *Id.* at *6.

Similarly, *United States v. Murphy*, No. CR 22-361 (RMB), 2024 WL 3440149 (D.N.J. July 17, 2024) reviewed a defendant's overbreadth challenge to a cellphone warrant. Notably, in denying defendant's motion, the court highlighted that the officer's affidavit reported defendant's use "a cellphone to communicate with potential co-conspirators while meeting with [an agent] in California, and again at the Hotel to communicate with what appeared to be co-conspirators who arrived at the Hotel to join the drug transaction." *Id.* at *3. Although the defendant in *Murphy* did not challenge the probable cause supporting a warrant for his cellphone, the affidavit's description of the device's relation to the crime endorses the concept that officer's must advance some baseline theory that is specific to defendant's incorporation of the cellphone into the alleged criminal activity.

Here, there is nothing in the warrant, "besides the [agent's] *ipse dixit* 'training and experience' which would create probable cause the phone contained evidence of the crime in question. *Williams*, 2025 WL 3640894, at *14. Absent controlling guidance on this point, this Court is unwilling to endorse warrants missing this key information.

26

### D. Good Faith Inquiry

Warrants lacking probable cause do not always guarantee suppression of evidence derived from an unconstitutional search. *United States v. Caesar*, 2 F.4th 160, 167 (3d Cir. 2021). The exclusionary rule does not seek to grant defendants any individual rights beyond the text of the Fourth Amendment, but is a prudential remedy meant to deter law enforcement from engaging in constitutional violations. *Id.* "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." *Zimmerman*, 277 F.3d at 436. Accordingly, "the exclusionary rule applies only where it results in appreciable deterrence" for future violations. *United States v. Werdene*, 883 F.3d 204, 218 (3d Cir. 2018) (cleaned up).

The Third Circuit has identified at least four circumstances where the good faith exception to the exclusionary rule does not apply:

(1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;

(3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

(4) where the warrant was so facially deficient that it failed to particularize the place to be searched or things to be seized.

*United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010) (citing *Zimmerman*, 277 F.3d at 436-437). The instant warrant is devoid of any objective basis for a finding of

27

probable cause.  Accordingly, the Court finds the Government's invitation to apply good faith falls short.

The operative question here is whether "an officer could reasonably believe that probable cause existed by assessing the facts in light of the *relevant legal standards* and pronouncements in applicable precedent."  *Caesar*, 2 F.4th at 171 (emphasis added).  Unlike the four-corners analysis evaluating the basis of probable cause, courts examine the totality of the circumstances when evaluating good faith – "considering not only any defects in the warrant but also the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known."  *Id.* at 170 (cleaned up).  Because this Court finds that a reasonable officer could not believe that any time a defendant is arrested with a cellphone the contents of that phone would be subject to search the Court believes that his warrant could not have been executed in good faith.

The Government relies heavily on *United States v. Leon* for the proposition that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, . . . for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  Gov't Opp'n at 26 (quoting 468 U.S. 897, 922 (1984)).  However, the Supreme Court in *Leon* continued "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be *objectively* reasonable."  *Leon*, 468 U.S. at 922 (emphasis added).

28

This Court recognizes that officers "are not trained attorneys and cannot be expected to second-guess a magistrate's probable cause determination." *Caesar*, 2 F.4th at 170. However, the Third Circuit requires the good faith analysis to be in the eyes of a "reasonably well-trained officer." *Id.* at 169. In this Court's view, a "reasonably well-trained officer" familiar with the bounds of the Fourth Amendment would know that their training and experience must be linked with some crime-specific facts regarding the place to be searched.

*Leon* is informative on this score but is factually distinguishable from the instant matter. In *Leon*, a CI told police of two individuals selling narcotics from a private residence. 468 U.S. at 901. The CI testified to witnessing, *inter alia*, multiple narcotic sales occurring from the house. *Id.* With this information, police launched an investigation into the suspects. *Id.* During the investigation, police witnessed one of the suspects entering the house—shortly thereafter leaving carrying a "small paper sack." *Id.*

Police also learned from another informant that one of the defendants stored large quantities of narcotics at a separate address, where police observed several persons delivering small packages and other "material activity." *Id.* at 901–02. This information, and other facts, culminated in the application for the search warrant challenged in *Leon*. *Id.* at 902–03. Against this backdrop, the district court granted the defendant's motion to suppress. The Ninth Circuit affirmed. On appeal, the Supreme Court determined that although probable cause did not exist,[19] good faith

---

[19]    This Court notes that in *Leon*, the Supreme Court left in place the Ninth Circuit's determination that probable cause did not exist and instead examined whether the good faith

applied because the warrant affidavit was the product of an "extensive investigation" and the "officers' reliance on the magistrate's determination of probable cause was objectively reasonable." *Id.* at 926.

The evidence upon which probable cause was found in the immediate case is far removed from what the Supreme Court determined is sufficient for an "objectively reasonable" officer to rely. A summary of Government's "evidence" in this case amounts to: Defendant was found with large quantities of drugs and has two phones; therefore, she is likely a drug trafficker. Further, in Agent Scanlan's experience, drug traffickers typically store information about their crimes on their phones. Government insists this is sufficient to establish probable cause and, alternatively, certainly enough for a reasonable officer to believe probable cause exists. This Court unequivocally disagrees. Without any evidence, direct or indirect, connecting Defendant's phone to a crime, it is not possible to have a reasonable and *objective* belief probable cause exists.

Finally, this Court must undertake a cost-benefit analysis weighing "the deterrence benefits of exclusion" against the "substantial social costs" of excluding the evidence. *Caesar*, 2 F.4th at 169 (quoting *Davis v. United States*, 564 U.S. 229, 237-238 (2011)). The Government insists that because a warrant was obtained "there

---

exception applied. *See Id.* at 905. If this Court was presented with the same evidence presented to the Ninth Circuit in *Leon*, it would likely have ruled differently. However, the warrant application is so far removed from any nexus connecting Defendant's phone to the crime as to render any belief in the existence of probable cause entirely unreasonable.

is no police illegality and thus nothing to deter." Gov't Opp'n at 25 (quoting *Leon*, 468 U.S. at 921). However, this Court finds there is substantial deterrent value here.

The use of boilerplate, stock warrant applications is a practice worth deterring. Suppressing this evidence puts the Government on notice that it must make a better effort in swearing out its warrants.[20]  Further, employing good faith to save the day in every case of a defective warrant works against the deterrent principle by incentivizing officers and prosecutors "to push the boundaries of constitutionality by aggressively employing invasive tactics with flimsy legal support." *In re Search of One Device & Two Individuals Under Rule 41*, 783 F. Supp. 3d at 193 n.5 (citing Matthew Tokson & Michael Gentithes, *The Reality of the Good Faith Exception*, 113 Geo. L.J. 551, 597 (2025)).[21]  Separately, the social cost to the Government in this instance is low. There is copious and damning evidence against the Defendant in this matter – even without the contents of the cellphone, which seemed to have yielded little in the way of information tending to prove the crimes charged in the indictment.[22] Accordingly, the cost-benefit analysis counsels against deploying good faith in this matter.

---

[20]    The Government represented during the hearing in this matter that it works in consultation with law enforcement to produce these warrants. Legal review of a warrant's sufficiency should increase efficacy.

[21]    *See also*, Tokson & Gentithes, at 583 n.210 (comparing good faith exception and notice to officers with the qualified immunity analysis).

[22]    "At present, the government has not identified any information from the limited, partial extraction of the Defendant's cell phones that it intends to introduce at trial." *See* Govt's Opp'n at 3 n.1.

32

## IV.    CONCLUSION

For the reasons above, this Court finds that the subject warrant and attached affidavit lack probable cause and the good faith exception to the exclusionary rule does not apply.

BY THE COURT:

GAIL A. WEILHEIMER,  J.